A09A0641. FEDD v. THE STATE.
(680 SE2d 453)

BERNES, Judge.

Following a trial by jury, Frank Solomon Fedd was convicted of aggravated assault upon a police officer and obstruction of an officer. Fedd appeals, contending that the trial court erred by failing to

---

timely administer the jurors' oath and by failing to instruct the jury that knowledge that the victim is a police officer is an essential element of the crime of aggravated assault upon a police officer. For the reasons set forth below, we conclude that the trial court's belated administration of the jury oath does not constitute reversible error. The trial court's erroneous failure to give the jury charge, however, requires that we vacate the judgment and remand the case to the trial court for entry of judgment and resentencing on the lesser included offense of aggravated assault.

Viewed in the light most favorable to the jury's verdict, the evidence at trial showed that in June 2006 at approximately 2:15 a.m., a uniformed sheriff's deputy responded to a domestic disturbance call at the residence of Fedd's ex-girlfriend. After speaking with the ex-girlfriend, the deputy drove his patrol car down the street where he located Fedd, who was on foot.

When the deputy saw Fedd, he got out of his car. Fedd then walked toward the deputy, brandishing a metal pole. The deputy, who knew Fedd, called him by name as Fedd approached him. When Fedd got close to the deputy, he raised the pole as if preparing to hit the deputy. The deputy immediately shot Fedd with a taser, knocking him to the ground. The deputy told Fedd to stay on the ground. Fedd disobeyed the deputy's command, got up, and ran away. The deputy ran after Fedd, but Fedd managed to escape. During the course of the pursuit, Fedd threw the metal pole at the deputy. Portions of the incident were captured on the video camera recording system in the deputy's patrol car.

Fedd was later arrested, charged, and convicted of aggravated assault upon a police officer[1] and obstruction of an officer.[2]

1. Fedd contends that his convictions must be overturned because the trial court failed to administer the jury oath prior to the presentation of the evidence at trial. The record reveals that following the close of the evidence, the trial court realized that it had failed to administer the jury oath. The trial court then administered the oath to the jurors and instructed them to "apply this oath" to the "evidence that [had been] heard" throughout the trial and that the oath applied "to all of [the] proceedings in this case."

OCGA § 15-12-139 sets forth the oath which must be adminis-

---

[1] "A person who knowingly commits the offense of aggravated assault upon a [police] officer while the [police] officer is engaged in, or on account of the performance of, his or her official duties" is guilty of this offense. OCGA § 16-5-21 (c).

[2] "[A] person who knowingly and willfully obstructs or hinders any law enforcement officer in the lawful discharge of his official duties is guilty of a misdemeanor." OCGA § 16-10-24 (a).

tered to the jury in all criminal cases:

> You shall well and truly try the issue formed upon this bill of indictment (or accusation) between the State of Georgia and (name of accused), who is charged with (here state the crime or offense), and a true verdict give according to the evidence. So help you God.

The statute does not provide a specific requirement concerning when this jury oath must be administered. Georgia case law provides broad parameters for the timing of the jury oath. If the oath is administered prior to the presentation of any evidence, there is no error. See *Thomas v. State*, 282 Ga. App. 522, 523-524 (2) (639 SE2d 531) (2006); *Gamble v. State*, 141 Ga. App. 304 (1) (233 SE2d 264) (1977). But, where there is a *total* failure to administer the oath, then the resulting jury conviction is a nullity. See *Slaughter v. State*, 100 Ga. 323, 330 (28 SE 159) (1897) ("a *total* failure to swear the jury is a matter which cannot, in any manner or under any circumstances, be waived. . . . [A]s a consequence, a conviction by an unsworn jury is a mere nullity.") (emphasis supplied). See also *Grant v. State*, 272 Ga. 213 (528 SE2d 512) (2000); *Culpepper v. State*, 132 Ga. App. 733 (2) (209 SE2d 18) (1974).

This appeal considers a belated oath given after the presentation of the evidence, but before the jury commenced deliberations and rendered their verdict.[3] These particular circumstances appear to present a question of first impression for our Georgia appellate courts. Our courts, however, have addressed similar issues regarding the administration of the jury oath. In doing so, we have recognized the distinction between a delay in administering the oath and a total failure to administer any oath before deliberations and the verdict. See *Marshall v. State*, 266 Ga. 304, 306 (5) (466 SE2d 567) (1996); *Booker v. State*, 257 Ga. 37, 39 (3) (354 SE2d 425) (1987) (because the jury was not totally unsworn, there was no reversible error in failing to give a separate oath to jurors in a bifurcated proceeding); *Colbert v. State*, 178 Ga. App. 657, 657-658 (1) (344 SE2d 479) (1986) (same). And, we have held that "[o]nly [the verdict of] a totally unsworn jury is a nullity." (Citation and punctuation omitted.) *Colbert*, 178 Ga. App. at 658 (1); *Smith v. State*, 122 Ga. App. 98 (1) (176 SE2d 284)

---

[3] The state incorrectly asserts that the trial court administered the oath prior to the presentation of the evidence. Though the record does not reveal the terms of the oath to which the state alludes, it is apparent that the oath given was the voir dire oath of OCGA § 15-12-132. The voir dire oath is a different oath, relating to the competency of the jurors and the reliability of their answers given during the jury selection process. It is not a substitute for the oath required to be given to the selected jurors in the trial of the case under OCGA § 15-12-139. See *Culpepper*, 132 Ga. App. at 733 (2).

(1970). Here, there was no *total* failure to administer the required jury oath. The trial jury had in fact been sworn before they deliberated and rendered their verdict, and therefore, automatic reversal is not required. See, e.g., *Marshall*, 266 Ga. at 306 (5); *Colbert*, 178 Ga. App. at 658 (1).

When the statutory requirements for administering an oath to a jury trying a criminal case have been utterly ignored, prejudice is presumed. But, where, as here, there has been a mere irregularity in the administration of the jury oath, the irregularity is subject to a harmless error analysis. See *Marshall*, 266 Ga. at 306 (5); *Booker*, 257 Ga. at 39 (3); *Slaughter*, 100 Ga. at 330; *Colbert*, 178 Ga. App. at 657-658 (1).[4]

Significantly, Fedd has failed to demonstrate any harm arising from the belated administration of the oath. There has been no showing that the jurors reached their verdict in disregard of the oath or the trial court's instructions. Under these circumstances, "[w]e find that the corrective measures taken by the trial court . . . were sufficient to insure a fair trial and consequently hold that the denial[s] of [Fedd's] motion[s] for mistrial [and for a new trial] w[ere] proper." *Aldridge v. State*, 153 Ga. App. 744, 746 (3) (266 SE2d 513) (1980). See also *Booker*, 257 Ga. at 39 (3); *Colbert*, 178 Ga. App. at 657-658 (1).

2. Fedd further contends that the trial court erred in failing to instruct the jury that knowledge by the defendant that the victim was a police officer is an essential element of the crime of aggravated assault upon a police officer. He argues that in light of the alleged error, he is entitled to be resentenced to the lesser included offense of aggravated assault. We agree.

"It is the duty of the judge, with or without request, to give the jury an appropriate instruction as to the law on each substantive point of issue involved in a case so as to enable the jury to judiciously decide the guilt or innocence of a defendant." (Punctuation and

---

[4] Other jurisdictions have also applied the harmless error analysis in affirming convictions when the jury took the oath belatedly, but before the verdict. See *Cooper v. Campbell*, 597 F2d 628, 629 (I) (8th Cir. 1979); *United States v. Hopkins*, 458 F2d 1353, 1354 (5th Cir. 1972); *Garner v. Alabama*, 89 So. 69, 69-70 (Ala. 1921); *Arizona v. Godfrey*, 666 P2d 1080, 1081-1082 (I) (Ariz. App. 1983); *Hollis v. Colorado*, 630 P2d 68, 70 (Colo. 1981); *People v. Abadia*, 767 NE2d 341, 347-349 (II) (Ill. App. 2001); *Alston v. Maryland*, 934 A2d 949, 964-965 (I) (Md. App. 2007) (writ of cert. granted); *Amado v. Commonwealth*, 212 NE2d 205 (Mass. 1965); *Stark v. Mississippi*, 97 So. 577 (Miss. 1923); *Missouri v. Frazier*, 98 SW2d 707, 715-716 (V) (Mo. 1936); *New Mexico v. Arellano*, 965 P2d 293, 295 (III) (N.M. 1998); *New York v. Morales*, 168 AD2d 85, 87-89 (I) (N.Y. App. Div. 1991); *Oregon v. Barone*, 986 P2d 5, 15-18 (Ore. 1999); *Tennessee v. Richeson*, 1993 Tenn. Crim. App. LEXIS 357, *8-9 (1993); *Brown v. Texas*, 220 SW3d 552, 554-555 (Tex. App. 2007); *Vermont v. Roberge*, 582 A2d 142, 143 (Vt. 1990); *Wisconsin v. Block*, 489 NW2d 715, 717-718 (II) (Wis. App. 1992); *Urbigkit v. Wyoming*, 67 P3d 1207, 1221 (D) (Wyo. 2003).

footnote omitted.) *Essuon v. State*, 286 Ga. App. 869, 872 (2) (650 SE2d 409) (2007). The defendant's knowledge that the victim was a police officer is an essential element of the aggravated assault upon a police officer offense and, thus, the trial court is required to instruct the jury as to this matter. See OCGA § 16-5-21 (c); *Bundren v. State*, 247 Ga. 180, 181-182 (2) (274 SE2d 455) (1981). The failure to give a jury instruction that adequately covers the knowledge element is erroneous, and unless it is deemed harmless, the error entitles the defendant to either a new trial or resentencing for the lesser included offense of aggravated assault under OCGA § 16-5-21 (b). See *Bundren*, 247 Ga. at 181-182 (2); *Stevenson v. State*, 234 Ga. App. 103, 106 (3) (c) (506 SE2d 226) (1998) (failure to give the jury instruction was deemed harmless when defendant's own testimony established that he knew that his victims were police officers).

Here, the trial court instructed the jury, in relevant part, by reading the indictment charging Fedd with the offense of aggravated assault upon a police officer and defining the offense under the terms of the statute. Significantly, however, the indictment did not contain a specific allegation that Fedd knew that the victim was a police officer.[5] And, the use of language such as "knowingly commits" or "knowingly assaults" in defining the offense is insufficient to meet the requirement for this jury instruction. See *Cornwell v. State*, 193 Ga. App. 561, 562 (2) (388 SE2d 353) (1989). Although the trial court also generally charged that "[i]ntent is an essential element of any crime" and that "[a] person shall not be found guilty of a crime if the act constituting the crime was induced by a misapprehension of fact," these instructions were insufficient to convey to the jury the requirement that the defendant must have knowledge that the victim was a police officer. As such, the trial court's jury instructions on the aggravated assault offense were deficient and did not adequately cover the knowledge element. See *Bundren*, 247 Ga. at 181-182 (2). Compare *Cornwell*, 193 Ga. App. at 562-563 (2).

And, unlike in *Stevenson*, 234 Ga. App. at 106 (3) (c), we cannot conclude that the error was harmless under the circumstances of this case. Here, Fedd's entire defense was based upon his alleged lack of knowledge that his assault victim was a police officer.[6] Accordingly,

---

[5] The indictment charged that Fedd "[made] an assault upon the person of [the officer], with a metal pole, an object which when used offensively against a person is likely to result in serious bodily injury, by throwing said metal pole at said victim, said person being a peace officer engaged in his official duties. . . ." Compare *Cornwell v. State*, 193 Ga. App. 561, 562-563 (2) (388 SE2d 353) (1989) (the jury charge encompassed the requisite instruction by reading the indictment, which alleged that the defendant had assaulted the officer "knowing said officer was a peace officer engaged in the performance of his official duties") (punctuation omitted).

[6] Fedd and his defense witnesses testified that prior to the incident with the officer, Fedd

we remand this case to the trial court with instructions that Fedd be resentenced to the lesser included offense of aggravated assault as provided by OCGA § 16-5-21 (b).[7]

*Judgment affirmed in part and reversed in part and case remanded with direction. Smith, P. J., and Phipps, J., concur.*

DECIDED JUNE 11, 2009 —
RECONSIDERATION DENIED JUNE 24, 2009 — ▮▮▮▮▮▮

Frank S. Fedd, *pro se.*

*Charles M. Ferguson, District Attorney, Keith W. Day, Assistant District Attorney*, for appellee.

---

had sustained an injury to his eye during a physical altercation with another individual who had been driving a white four-door vehicle similar to that of the officer's patrol car. Fedd claimed that he only saw headlights when the officer approached him, and due to his impaired vision, he thought that he was being confronted by the individual with whom he had the prior altercation.

[7] While the sentencing sheet denominates the offense for which Fedd was sentenced as "aggravated assault," the record otherwise shows that the jury found Fedd guilty of aggravated assault upon a police officer as charged and the trial court's sentencing form reflects the imposition of a 20-year sentence based upon the verdict. The permissible sentences for "aggravated assault" and "aggravated assault upon a police officer" differ only with respect to the possible minimum sentences. OCGA § 16-5-21 (b), (c).