**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and PINSON, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**October 5, 2021**

# In the Court of Appeals of Georgia

A20A1873. STATE v. BOWMAN.

DILLARD, Presiding Judge.

Following a trial by jury, Logan Adam Bowman was convicted on one count of child molestation and one count of incest,[1] and he was ultimately sentenced to serve fifty years with the first fifteen years in confinement. Nearly five years later, Bowman's then-appellate counsel filed an amended motion for new trial, alleging that the petit jury was unsworn; and—with consent of the State—this motion was granted. Shortly thereafter, Bowman filed a motion for discharge and acquittal on the grounds that his statutory and constitutional rights to a speedy trial—which he properly asserted prior to trial—were violated by the nullified verdict. The trial court granted

---

[1] The jury acquitted Bowman on seven other counts of aggravated child molestation (one count), child molestation (five counts), and incest (one count).

Bowman's motion, and it is from this grant that the State now appeals. In doing so, the State argues the trial court erred in concluding that Bowman was barred from retrial on statutory and constitutional speedy trial grounds. And for the reasons noted *infra*, we agree with the State and reverse.[2]

The record shows that Bowman was indicted on February 17, 2014, for the above-referenced offenses. Then, on September 18, 2014, Bowman filed both an assertion of his constitutional right to a speedy trial[3] and a demand for a speedy trial under OCGA § 17-7-170. He was ultimately tried and convicted by a jury on December 5, 2014. On January 13, 2015, Bowman filed his initial motion for new trial, but the record reflects no ruling on this motion or any other action until a February 2019 order for production and rule nisi for a hearing on the still-pending motion for new trial.

---

[2] Oral argument was held in this case on October 7, 2020, and is currently archived on the Court's website for public viewing. *See* Court of Appeals of Georgia, Oral Argument, Case No. A20A1873 (October 7, 2020), available at https://www.gaappeals.us/oav/A20A1873.php.

[3] *See* U.S. CONST. Amend. VI (providing that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial"); GA. CONST. Art. I, Sec. I, Par. XI (a) ("In criminal cases, the defendant shall have a public and speedy trial by an impartial jury; and the jury shall be the judges of the law and the facts.").

Thereafter, prior to any hearing, new post-conviction counsel entered an appearance in May 2019 on Bowman's behalf and eventually filed an amended motion for new trial on September 27, 2019. In doing so, counsel asserted for the first time that, *inter alia*, the trial court committed structural error by failing to swear the petit jury prior to its deliberations. On November 1, 2019, the State *consented* to the grant of Bowman's motion for new trial, agreeing that the trial court failed to swear the petit jury, which resulted in reversible error.[4]

On November 19, 2019, yet another attorney entered an appearance on Bowman's behalf. And on November 27, 2019, Bowman filed a motion for discharge and acquittal, asserting that his right to a speedy trial was violated due to the trial court's failure to swear the petit jury. That same day, the State filed a motion for a declaratory order, seeking clarification as to whether Bowman's pre-trial motion for speedy trial was still in effect. The trial court ruled in Bowman's favor on March 30, 2020, concluding that the unsworn jury's verdict was a nullity and, thus, discharge was required on the statutory grounds. Additionally, the trial court determined that

---

[4] It remains undisputed on appeal that the trial court failed to swear the petit jury.

Bowman's constitutional right to a speedy trial was violated by the nullified verdict. This appeal by the State follows.[5]

1. For starters, the State argues the trial court erred by concluding that Bowman's statutory right to a speedy trial was violated by its failure to swear the petit jury. We agree.

The denial of a speedy-trial demand "presents a question of law which this Court reviews *de novo*."[6] And here, it is undisputed that Bowman filed a statutory speedy trial demand in compliance with OCGA § 17-7-170 (a).[7] What *is* disputed is

---

[5] Upon being docketed, we conducted a jurisdictional review and decided to transfer this appeal to the Supreme Court of Georgia because it possibly involved a constitutional question over which we lacked jurisdiction. But the case was eventually reinstated when our Supreme Court concluded that "this appeal does not implicate this Court's jurisdiction[.]"

[6] *Uribe v. State*, 346 Ga. App. 264, 265 (1) (816 SE2d 113) (2018); *accord Rogers v. State*, 340 Ga. App. 24, 24 (795 SE2d 328) (2016); *see Glenn v. State*, 310 Ga. 11, 30 (2) (849 SE2d 409) (2020) (explaining that appellate courts review questions of law *de novo*).

[7] *See Rogers*, 340 Ga. App. at 24-25 ("OCGA § 17-7-170 (a) pertinently sets forth the required form of a statutory speedy trial demand: A demand for speedy trial filed pursuant to this Code section shall be filed as a separate, distinct, and individual document and shall not be a part of any other pleading or document. Such demand shall clearly be titled 'Demand for Speedy Trial'; reference this Code section within the pleading; and identify the indictment number or accusation number for which such demand is being made." (punctuation omitted)).

4

whether Bowman was "tried" or put on "trial" for purposes of OCGA §§ 17-7-170 (b) and (c).

OCGA § 17-7-170 (b) provides, in relevant part, that if the defendant "is not *tried* when the demand for speedy trial is made or at the next succeeding regular court term thereafter, provided that at both court terms there were juries impaneled and qualified to try the defendant, the defendant shall be absolutely discharged and acquitted of the offense charged in the indictment or accusation."[8] And OCGA § 17-7-170 (c) provides that a statutory speedy trial demand expires "at the conclusion of the *trial* or upon the defendant entering a plea of guilty or nolo contendere."[9] In this regard, Bowman argued below—and now likewise contends on appeal—that because the jury was not sworn as required by OCGA § 15-12-139[10] when he was tried in

[8] (Emphasis supplied).

[9] (Emphasis supplied); *see Works v. State*, 301 Ga. App. 108, 111 (2) (686 SE2d 863) (2009) ("[I]t is well established that once the case was tried, [the convicted defendant's] demand for a speedy trial expired."); *Williams v. State*, 296 Ga. App. 888, 888-89 (676 SE2d 303) (2009) (holding that defendant's statutory demand for a speedy trial expired at the conclusion of his original trial and was not still in force and effect following the grant of his motion for new trial).

[10] This Code section provides that, in all criminal cases, the judge or clerk must administer the following oath to the jury: "You shall well and truly try the issue formed upon this bill of indictment (or accusation) between the State of Georgia and (name of accused), who is charged with (here state the crime or offense), and a true

2014, he was not "tried" or on "trial" for purposes of OCGA §§ 17-7-170 (b) or (c). But the State disagrees, arguing, *inter alia*, that "pursuant to the plain language" of these statutory provisions, Bowman's "only speedy trial demand in this case" expired after trial and sentencing.

Nevertheless, before reaching this claim of error, we must first address the State's suggestion that we are at liberty to disregard well-established, binding precedent that the complete failure to swear a petit jury prior to deliberations demands a new trial. Although the State goes to great lengths to provide citations from foreign authorities holding otherwise, we are bound by the precedent established by the Supreme Court of Georgia,[11] which has long made clear that a complete failure by the

verdict give according to the evidence. So help you God."

[11] *See* GA. CONST., art. VI, § VI, ¶ VI (1983) ("The decisions of the Supreme Court shall bind all other courts as precedents."); *State v. Jackson*, 287 Ga. 646, 658 (5) (697 SE2d 757) (2010) ("Stare decisis is an important principle that promotes the rule of law[.]"); *McKibben v. State*, 340 Ga. App. 89, 92 n.10 (796 SE2d 478) (2017) (noting that decision of the Supreme Court of Georgia "remains binding authority over this Court unless and until it is overturned by our Supreme Court"); *Whorton v. State*, 321 Ga. App. 335, 339 (1) (741 SE2d 653) (2013) ("[V]ertical stare decisis dictates that we faithfully adhere to the precedents established by the Supreme Court of Georgia[.]"); *see also* Bryan A. Garner, et al., THE LAW OF JUDICIAL PRECEDENT 155 ("When dealing with binding vertical precedent, a court has no room to decide how much weight or value to give each case."); Kurt T. Lash, *Originalism, Popular Sovereignty, and Reverse Stare Decisis*, 93 VA. L. REV. 1437, 1454 (2007) (noting that "[v]ertical stare decisis refers to the binding effect of

6

trial court to swear the petit jury—as the State concedes occurred in this case—requires retrial.[12] And this cannot be waived by the defendant's failure to object at trial.[13] Indeed, both this Court and the Supreme Court have previously

precedent on lower courts," and that "[s]erious rule of law costs would follow if lower courts were free to ignore precedent established by a higher court of appeal").

[12] *See Hill v. State*, 291 Ga. 160, 161 (2) (728 SE2d 225) (2012) ("The oath provided in OCGA § 15-12-139 is mandatory and a trial court's total failure to give the oath to the jury is reversible error. In other words, [when] it appears affirmatively that the jury was not sworn, a subsequent conviction must be set aside and the case must be remanded for retrial." (citations & punctuation omitted)); *Adams v. State*, 286 Ga. 496, 497 (2) (690 SE2d 171) (2010) ("The oath provided in OCGA § 15-12-139 is mandatory and a trial court's total failure to give the oath to the jury is reversible error."); *Spencer v. State*, 281 Ga. 533, 533 (640 SE2d 267) (2007) ("This Court has made plain that the petit jury oath provided in OCGA § 15-12-139 is mandatory; consequently, the failure to administer this oath to the trial jury requires the setting aside of any conviction based upon the decision of such an unsworn body and that there be a subsequent retrial."); *Grant v. State*, 272 Ga. 213, 213 (528 SE2d 512) (2000) ("[T]he State now concedes that the jury oath which is mandated by OCGA § 15-12-139 was never administered in this case. It follows that [the defendant's] motion to set aside his conviction should have been granted and the case must be remanded for retrial." (footnote omitted)); *see also Benton v. State*, 286 Ga. App. 736, 736 (649 SE2d 793) (2007) ("[When] it appears affirmatively that the jury was not sworn, a subsequent conviction must be set aside and the case must be remanded for retrial." (punctuation omitted)); *Culpepper v. State*, 132 Ga. App. 733, 733 (2) (209 SE2d 18) (1974) ("The failure to swear the jury to try the particular case . . . constitutes reversible error.").

[13] *See Phillips v. State*, 275 Ga. 595, 596 (3) (571 SE2 361) (2002) ("A criminal defendant may not waive the trial court's complete failure to administer an oath to the jury."); *Slaughter v. State*, 100 Ga. 323, 323 (28 SE 159) (1897) ("Our conclusion in the present case is that while administering the wrong oath to a jury in a criminal case

explained that the *complete* failure to swear a jury results in a conviction that is a

nullity,[14] noting that "jeopardy does not attach in a jury trial until the jury is

impaneled *and sworn*[.]"[15]

---

may be regarded as a mere irregularity, of which the accused cannot avail himself after deliberately maintaining silence until after verdict, a total failure to swear the jury is a matter which cannot, in any manner or under any circumstances, be waived[.]"); *see also Colbert v. State*, 178 Ga. App. 657, 657 (1) (344 SE2d 479) (1986) ("In a criminal case, a total failure to swear the jury (to try the particular case) is a matter which cannot, in any manner or under any circumstances, be waived." (punctuation omitted)); *Culpepper*,132 Ga. App. at 733 (2) (same).

[14] *See Slaughter*, 100 Ga. at 323 ("[A] conviction by an unsworn jury is a mere nullity, of which the accused could not, upon a subsequent arraignment, avail himself by a plea of autre fois convict."); *see also Adams*, 286 Ga. at 497 (2) ("Several state courts have, like this Court, held that the complete absence of the petit jury oath renders the conviction a nullity."); *Fedd v. State*, 298 Ga. App. 508, 510 (1) (680 SE2d 453) (2009) ("[O]nly the verdict of a totally unsworn jury is a nullity." (punctuation omitted)); *Keller v. State*, 261 Ga. App. 769, 770 (2) (583 SE2d 591) (2003) ("A conviction by an unsworn jury is a mere nullity." (punctuation omitted)); *Colbert*, 178 Ga. App. at 658 (1) ("Only a totally unsworn jury is a nullity." (punctuation omitted)); *Smith v. State*, 122 Ga. App. 98, 98 (1) (176 SE2d 284) (1970) ("Only a totally unsworn jury is a nullity.").

[15] *Alexander v. State*, 279 Ga. 683, 684 (2) (b) (620 SE2d 792) (2005) (emphasis supplied); *see Spencer*, 281 Ga. at 533 (holding that jeopardy did not attach in trial before unsworn jury, and defendant could be tried for all the same charges in the new trial, including those for which he was acquitted by the unsworn jury); *Laster v. State*, 268 Ga. 172, 173 (1) (486 SE2d 153) (1997) ("Once a jury is impaneled *and sworn*, jeopardy attaches and an accused is entitled to have the trial proceed to an acquittal or conviction by that jury." (emphasis supplied)); *see also* U.S. CONST. Amend. V (" . . . nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb . . . ."); GA. CONST. Art. 1, § 1, ¶ XVIII ("No

But just because an unsworn jury renders a *conviction* a nullity such that it requires a retrial,[16] this does not mean the first *trial* is rendered a nullity such that a defendant is entitled to a discharge and acquittal under OCGA § 17-7-170 (b). As the Supreme Court of Georgia has explained, "OCGA § 17-7-170 was enacted to implement the constitutional provision for a speedy trial,"[17] and it does not provide any substantive right but, rather, establishes a procedure for securing the existing

person shall be put in jeopardy of life or liberty more than once for the same offense except when a new trial has been granted after conviction or in case of mistrial."). *See generally Martinez v. Illinois*, 572 U.S. 833, 839 (II) (A) (134 SCt 2070, 188 LE2d 1112) (2014) ("There are few if any rules of criminal procedure clearer than the rule that jeopardy attaches when the jury is empaneled and sworn." (punctuation omitted)).

[16] *See supra* notes 12, 14.

[17] *Hubbard v. State*, 254 Ga. 694, 695 (333 SE2d 827) (1985); *see State v. Varner*, 277 Ga. 433, 434 (589 SE2d 111) (2003) ("The demand for trial statutes, OCGA §§ 17-7-170 and 17-7-171, are regarded as in aid and implementation of the State constitutional right to a speedy trial." (punctuation omitted)); *Henry v. State*, 263 Ga. 417, 418 (434 SE2d 469) (1993) ("Under Georgia law, OCGA § 17-7-171, and its parallel section for non-capital cases, OCGA § 17-7-170, is a procedural device by which a defendant may assert his constitutional right to a speedy trial."); *Stripland v. State*, 115 Ga. 578, 578 (41 SE 987) (1902) ("The provision which gives to an accused person the right to demand a trial at a specified term of the court in which he stands indicted, and declares that he shall be discharged and stand acquitted unless the state shall bring him to trial at least at the second term after such demand, was enacted to meet the constitutional provision which guaranties to all persons charged with [a] crime the right of a speedy trial.").

constitutional right.[18] Indeed, our Supreme Court has compared the concerns shared

by defendants in terms of receiving a speedy trial or being twice placed in jeopardy,

as follows:

> In the absence of a right to a speedy trial the accused might suffer
> uncertainty, emotional stress, and the economic strain of a pending
> prosecution indefinitely. These values are of a magnitude similar to the
> values at stake in double jeopardy claims. The Supreme Court [of the
> United States] has pointed out that, in addition to the concern of being
> twice convicted, a double jeopardy claimant is concerned with
> 'embarrassment, expense and ordeal and compelling him to lie in a
> continuing state of anxiety and insecurity.'"[19]

Put another way, in double-jeopardy claims, "the accused is saying, 'I may not now

be tried because I have previously been placed in jeopardy.'"[20] And in a claim based

on OCGA § 17-7-170 the accused is saying, "I may not now be tried because the time

---

[18] *See Henry*, 263 Ga. at 418 (noting that the capital and non-capital code sections "[do] not provide any substantive right" and "merely establish the procedure for securing that right").

[19] *Hubbard*, 254 Ga. at 695 (punctuation omitted) (quoting *Green v. United States*, 355 U.S. 184, 187 (78 SCt 221, 2 LE2d 199) (1957)).

[20] *Id.*

during which I must have been placed on trial has passed."[21] But as also recognized by our Supreme Court:

> Unlike the protection afforded by the Double Jeopardy Clause, the Speedy Trial Clause does not, either on its face or according to the decisions of this Court, encompass a "right not to be tried" which must be upheld prior to trial if it is to be enjoyed at all. It is the delay before trial, not the trial itself, that offends against the constitutional guarantee of a speedy trial.[22]

With this in mind, our Supreme Court has concluded that when a defendant makes a statutory request for a speedy trial, "a mistrial resulting from other than inevitable accident such as the death or sickness of the judge or one or more of the jury . . . does *not* constitute a trial that satisfies the State's obligation under the demand for trial statutes."[23]

---

[21] *Id.*

[22] *Sosniak v. State*, 292 Ga. 35, 39 (2) (734 SE2d 362) (2012).

[23] *Varner*, 277 Ga. at 435 (punctuation omitted) (emphasis supplied); *accord Geiger v. State*, 25 Ga. 667, 668-69 (1858); *see Orvis v. State*, 237 Ga. 6, 6 (1) (226 SE2d 570) (1976) ("[A] mistrial based on the jury's inability to reach a verdict does not satisfy the speedy trial requirements of our Code, at least [when] the defendant could have been retried before the expiration of the term[.]" (citations omitted)). Under these circumstances, the State
> meets its obligation under the demand statute when it re-tries the
> defendant during the remainder of the term of mistrial, provided there

11

But this case does not involve a mistrial. Instead, the trial court failed to swear the petit jury and that failure went entirely unnoticed by everyone involved—including the trial court. So, as far as all involved were concerned, Bowman was in fact *tried* (or had a *trial*) and then convicted of the crimes for which he was indicted, resulting in his *post-trial* incarceration. And while the trial court's failure to swear the petit jury renders Bowman's conviction a nullity, there is no statutory or precedential basis for concluding that he was not *tried* within the meaning of OCGA §§ 17-7-170 (b) or (c). To the contrary, the ordinary signification of "trial"

---

are jurors impaneled and qualified to hear the case and, if not, in the next succeeding regular term of court, again provided there are juries impaneled and qualified to hear the case.

*Varner*, 277 Ga. at 435; *see* OCGA § 17-7-170 (b) ("If the defendant is not tried when the demand for speedy trial is made or at the next succeeding regular court term thereafter, provided that at both court terms there were juries impaneled and qualified to try the defendant, the defendant shall be absolutely discharged and acquitted of the offense charged in the indictment or accusation."); *State v. Allen*, 165 Ga. App. 86, 87-88 (299 SE2d 158) (1983) ("The fact that a mistrial was declared at the next term after the defendant had made demand for trial is not a reason for refusing his discharge. The court could have put the defendant on trial before another jury at the same term of the court. So far as the record discloses, there was no obstacle in the way of trying the defendant again at the [same] term, except the difficulty and expense of obtaining another jury. Therefore, the trial court correctly granted defendant's motion for discharge and acquittal." (citations & punctuation omitted)).

12

supports our determination that he was tried within the meaning of those statutes: "[t]he examination and determination of a cause by a judicial tribunal; determination of the guilt or innocence of an accused person by a court"[24] or "[a] formal judicial examination of evidence and determination of legal claims in an adversary proceeding."[25]

Unfortunately, until Bowman filed his amended motion for new trial nearly five years later, the reversible error committed in his trial went undiscovered. To be sure, the failure to swear a petit jury is no small matter, as the caselaw we have highlighted *supra* reflects. And this is why Bowman's motion for new trial was correctly granted by the trial court. But until the error was noticed by the trial court, Bowman, or the State, there was no way to rectify the situation. And as lamentable as the post-conviction delay in discovering this error may be, it does not implicate or trigger the protections of OCGA § 17-7-170 (b).[26] Bowman was "tried" or placed on "trial"

_____

[24] *Trial*, THE OXFORD ENGLISH DICTIONARY (modified online Sept. 2021).

[25] *Trial*, BLACK'S LAW DICTIONARY (8th ed. 2005).

[26] We in no way wish to diminish either the error committed by the trial court when it failed to swear the petit jury or Bowman's assertion that he suffered great emotional and physical distress during his incarceration after the initial trial.

13

within the plain meaning of OCGA §§ 17-7-170 (b) and (c),[27] and the fact that his *conviction*[28] was subsequently (and rightly) declared a nullity[29] is of no consequence in determining whether his speedy trial demand was satisfied. Thus, although the failure of the trial court to swear the petit jury unquestionably rendered Bowman's conviction a nullity (meaning that he may be retried for all of the charges he faced, including those for which he was acquitted, without running afoul of the Double Jeopardy Clause),[30] this nullity does not entitle him to a discharge and acquittal under

---

[27] *See supra* notes 24 & 25.

[28] *See Conviction*, THE OXFORD ENGLISH DICTIONARY (3d ed. 2003) (modified online June 2021) (defining *conviction* as "[t]he proving or finding a person guilty of an offence with which he is charged before a legal tribunal; legal proof or declaration of guilt; the fact or condition of being convicted: sometimes including the passing of sentence"); *Conviction*, BLACKS LAW DICTIONARY (8th ed. 2005) (defining *conviction* as "[t]he act or process of judicially finding someone guilty of a crime; the state of having been proved guilty" and "[t]he judgment (as by a jury verdict) that a person is guilty of a crime").

[29] *See supra* note 14; *see also Nullity*, THE OXFORD ENGLISH DICTIONARY (3d ed. 2003) (modified online Sept. 2021) (defining *nullity* as "[t]he action of rendering something null or of no effect" and "[a]n act, procedure, etc., which is null or invalid"); *Nullity*, BLACKS LAW DICTIONARY (8th ed. 2005) (defining *nullity* as "[s]omething that is legally void" or the "fact of being legally void").

[30] *See Spencer*, 281 Ga. at 533 (holding that jeopardy did not attach in trial before unsworn jury, and defendant could be tried for all the same charges in the new trial, including those for which he was acquitted by the unsworn jury).

14

OCGA § 17-7-170 (b). There is simply no legal basis supporting Bowman's attempt to extend the nullification of a *conviction* due to a violation of OCGA § 15-12-139 to the underlying *trial*[31] itself for purposes of OCGA §§ 17-7-170 (b) and (c). Suffice it to say, a trial and conviction are not synonymous, nor are they to be conflated.

In sum, Bowman had a complete trial, beginning with voir dire and ending with a jury verdict and sentencing. To be sure, Bowman's conviction was eventually declared a nullity due to the trial court's failure to swear the petit jury in violation of OCGA § 15-12-139, but he was still tried within the meaning of OCGA §§ 17-7-170 (b) and (c). As a result, Bowman's statutory request for a speedy trial in this case expired when his initial trial concluded, notwithstanding the reversible error committed by the trial court.[32] Indeed, under OCGA § 17-7-170 (c), "[a]ny demand

---

[31] *See supra* notes 24 & 25.

[32] As a reminder to the Bench and Bar, cases prior to 2003 held that when a defendant filed a statutory request for a speedy trial and was later granted a new trial, the State had the remainder of that term in which the motion for new trial was granted and one additional regular term of court in which to try the defendant under his demand for trial, provided there were juries impaneled and qualified to try the defendant. *See Silvey v. State*, 84 Ga. 44, 46 (10 SE 591) (1889) (holding that if defendant was not tried by end of the term following term in which motion for new trial was granted, "he was entitled to discharge under his demand"); *see also Henry v. James*, 264 Ga. 527, 531 (1) (c) (449 SE2d 79) (1994) ("[U]pon the filing of the remittitur from the appellate court by the clerk's office of the trial court, the State shall have the remainder of that term and one additional regular term of court in

15

for speedy trial filed pursuant to this Code section shall expire at the conclusion of the *trial* or upon the defendant entering a plea of guilty or nolo contendere."[33] Thus, Bowman's demand expired at the conclusion of his *trial* in 2014. And because

which to try the defendant pursuant to his demand for trial, provided there are juries impaneled and qualified to try the defendant."). Likewise, when a verdict was reversed on appeal, "upon the filing of the remittitur from [this Court] by the clerk's office of the trial court, the State [had] the remainder of that term and one additional regular term of court in which to try [a defendant] pursuant to his [prior] demand for trial, provided there are juries impaneled and qualified to try the defendant." *Henry*, 264 Ga. at 531 (1) (c); *see Varner*, 277 Ga. at 435-36 ("[W]hen a conviction is overturned on appeal [or] when a trial court grants a motion for new trial following the return of a guilty verdict[,] . . . this Court [has] concluded that the demand for trial was still in force and the State met its statutory burden to provide a timely trial when it re-tried the defendant in the term in which the remittitur or grant of new trial was filed, or in the next regular term of court." (citation & footnote omitted)); *see also Dennis v. Grimes*, 216 Ga. 671, 672 (1) (118 SE2d 923) (1961) (holding that a defendant who is granted a new trial "is not required to again demand a trial [because] the State is already on notice of the demand"), *disapproved on other grounds by Henry*, 264 Ga. 529 (1) (b), *cited with approval by Varner*, 277 Ga. at 435 n.3. But as we recognized in *Williams v. State*, the 2003 enactment of OCGA § 17-7-170 (c) abrogated these cases. 296 Ga. App. 888 (676 SE2d 303) (2009) ("This case law was abrogated by the legislature's enactment of subsection (c), which provides that "[a]ny demand for speedy trial filed pursuant to this Code section shall expire at the conclusion of the trial . . . ."); *see also* Ga. L. 2003, p. 154, § 3 (enacting OCGA § 17-7-170 (c)).

[33](Emphasis supplied). *See Works*, 301 Ga. App. at 111 (2) ("Regardless of the actions prior to trial, it is well established that once the case was tried, [the defendant's] demand for a speedy trial expired."); *Williams*, 296 Ga. App. at 889 ("[The defendant's] demand for speedy trial, filed prior to his original trial, expired once that trial was concluded. No demand for speedy trial remained in force and effect at the time [the defendant] was granted a new trial.").

16

Bowman's statutory speedy trial demand was satisfied, the reversal of his conviction and a retrial are the proper remedies for the trial court's failure to swear the petit jury,[34] *not* discharge and acquittal.

2. The State next argues that the trial court erred in granting Bowman's motion for discharge and acquittal on the ground that his constitutional right to a speedy trial was violated.[35] And because Bowman was "tried" or placed on "trial" for purposes of OCGA § 17-7-170 (b), there was no presumptively prejudicial delay from which to trigger the two-tiered analysis relevant to constitutional speedy trial claims. So, we agree with the State on this point as well.

The analysis for constitutional speedy trial claims under the Sixth Amendment and the Georgia Constitution is "laid out in the 1972 case of *Barker v. Wingo*[36] and

---

[34] *See supra* notes 12, 14.

[35] *See* U.S. CONST. Amend. VI (providing that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial"); GA. CONST. Art. I, Sec. I, Par. XI (a) ("In criminal cases, the defendant shall have a public and speedy trial by an impartial jury; and the jury shall be the judges of the law and the facts.").

[36] 407 U.S. 514 (92 SCt 2182, 33 LE2d 101) (1972).

the 1992 decision in *Doggett v. United States*,[37] which is to date the Supreme

Court's last detailed discussion of the topic."[38] In this analysis,

> [f]irst, the court must determine whether the interval from the accused's arrest, indictment, or other formal accusation to the trial is sufficiently long to be considered presumptively prejudicial. If not, the speedy trial claim fails at the threshold. If, however, the delay has passed the point of presumptive prejudice, the court must proceed to the second step of the . . . analysis, which requires the application of a delicate, context-sensitive, four-factor balancing test to determine whether the accused has been deprived of the right to a speedy trial.[39]

Here, Bowman's only argument is that his right to a speedy trial was violated

because the period between his arrest and the grant of his motion for discharge and

acquittal was more than 78 months. But we have concluded the initial trial was a trial

for "speedy trial" purposes, notwithstanding the reversible error committed. Thus,

under these circumstances, the proper calculation for delay is the time between the

---

[37] 505 U.S. 647 (112 SCt 2686, 120 LE2d 520) (1992).

[38] *Ruffin v. State*, 284 Ga. 52, 55 (2) (663 SE2d 189) (2008).

[39] *Id.* (punctuation & footnote omitted); *see Layman v. State*, 284 Ga. 83, 85 (663 SE2d 169) (2008) ("The court must first consider the length of delay when conducting a *Barker* analysis. If the delay passes the threshold test of presumptively prejudicial, then the delay is considered a second time by factoring it into the prejudice prong of the *Barker* analysis." (citations & punctuation omitted)).

18

trial court's ruling upon Bowman's amended motion for new trial and the grant of his motion for discharge and acquittal.[40] And because the trial court erred in its analysis of this question, it improperly calculated the delay, which, at less than one year, was

---

[40] *See Jakupovic v. State*, 287 Ga. 205, 206 (1) (a) (695 SE2d 247) (2010) ("[When], as here, there is no contention that there was any inordinate delay in ruling on the defendant's motion for new trial, the length of the delay in retrying the defendant is measured from the date that the trial court ruled upon the defendant's motion."); *see also Brewington v. State*, 288 Ga. 520, 521 (2) (705 SE2d 660) (2011) ("While typically the time for speedy trial attaches at the date of arrest (or date of indictment/accusation if earlier), in this case appellants . . . were actually tried. . . . Therefore, as to these two defendants, the relevant time frame for purposes of the instant motion to dismiss on constitutional speedy trial grounds is from the date of the mistrial . . . through the date the motion [to dismiss] was denied[.]"); *Whatley v. State*, 326 Ga. App. 81, 90 (2) (755 SE2d 885) (2014) ("[B]ecause the mistrial was not caused by prosecutorial misconduct, we find no error in the trial court's decision to apply *Brewington* and calculate the relevant time period for [appellant's] speedy trial claim[.]"); *McCree v. State*, 313 Ga. App. 101, 102-03 (720 SE2d 208) (2011) ("In this case, the relevant time frame for purposes of the motion to dismiss on constitutional speedy trial grounds is from the date of the mistrial through the date the motion was denied." (punctuation omitted)); *Wilson v. State*, 311 Ga. App. 780, 782 (717 SE2d 300) (2011) (same).

not presumptively prejudicial.[41] Bowman's constitutional argument thus fails at the threshold.[42]

Accordingly, for all these reasons, we reverse the trial court's grant of Bowman's motion for discharge and acquittal.

*Judgment reversed. Mercier and Pinson, JJ., concur.*

---

[41] *See State v. Grayson*, 332 Ga. App. 862, 866-67 (2) (775 SE2d 222) (2015) (concluding that trial court erred by calculating length of delay from date defendant was arrested until the date court granted his motion to dismiss, rather than calculating based upon the date of mistrial until the date court ruled upon the motion to dismiss on constitutional speedy trial grounds, which was less than one year and thus not presumptively prejudicial); *see also, e.g.*, *Higgins v. State*, 308 Ga. App. 257, 259 (1) (707 SE2d 523) (2011) ("Georgia courts have held that a delay of more than one year is presumptively prejudicial.").

[42] *See, e.g.*, *Ruffin*, 284 Ga. at 55 (2) (explaining that if the delay is not presumptively prejudicial, the claim fails at the threshold).